Cannon, Appellant, *v*. Bresch.

Argued January 26, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Russell J. O'Malley,* of *O'Malley & O'Malley,* for appellant.—A party may contract for indemnity against the results flowing from his own acts; but "no inference from words of general import can establish it"; on the contrary, "the intent of both parties to that effect must be made apparent by clear, precise and unequivocal language: Camden Safe Dep. Co. v. Eavenson, 295 Pa. 357; Conneaut Lake Ice Co. v. Quiggly, 225 Pa. 605.

The various contingencies enumerated in the release do not include the incident which happened.

In the present case the release does not in terms or by inference exempt the defendant from liability for his own negligence: Lerner v. Heicklen, 89 Pa. Superior Ct. 234.

Additional cases favorable to plaintiff herein and in point with the contention that the release does not exempt the lessor from liability where affirmative negligence exists in the lessor are: Chapman & Smith Co. v. Novelty Co., 175 Ill. App. 397; Second United Cities Realty Corp. v. Hare, 165 N. Y. Supp. 371.

*Cornelius B. Comegys,* for appellee.—The release discharges lessor from damage arising through negligence: Lerner v. Heicklen, 89 Pa. Superior Ct. 234; Rose v. Finance Co., 21 Pa. Dist. R. 490; Atherton v. Coal Co., 267 Pa. 425; Bash v. Ice Co., 100 Pa. Superior Ct. 359; Vulcanite Paving Co. v. Phila., 239 Pa. 524; McMillin v. Titus, 222 Pa. 500; Knickerbocker Trust Co. v. Ryan, 227 Pa. 245.

The release includes damages from water: Atherton v. Coal Co., 267 Pa. 425; Updegrove v. R. R., 132 Pa. 540; Shay v. Sherwood, 66 Pa. Superior Ct. 463.

OPINION BY MR. JUSTICE DREW, March 14, 1932:

This is an action of trespass by a tenant against a landlord for damage to stock in trade and fixtures on the leased premises.

The plaintiff-appellant leased from defendant a storeroom on the first floor of a building in Scranton, and took possession and opened a hat shop therein. On May 14, 1929, the defendant was in possession and control of the rooms directly above plaintiff's storeroom, and in exclusive possession and control of the furnace room in the building. The heating system, including the boiler, pipes, radiators, etc., was controlled and maintained by the defendant, and he furnished heat to the plaintiff for the rental agreed upon in the lease. During the night of May 14, 1929, water in the radiators, on the floor above that occupied by plaintiff, which radiators and rooms were in the possession and control of defendant, flowed from the air vents of the radiators and ran through the ceiling between the first and second floors on to the goods and merchandise and fixtures of the plaintiff. The valve through which water flowed into the boiler of the furnace was out of repair on that date, and had been out of repair for four or five months previous thereto, and the defendant had knowledge of this defect and had failed to repair it. It was because the valve was out of repair, and because the janitor in the employ of the defendant turned the water into the boiler and neglected to turn it off, that the boiler became flooded, and water forced through the pipes into the radiators created a pressure that opened the vents on the radiators, causing the flow of water therefrom which passed through the ceiling and into the demised premises, resulting in damage and loss to the plaintiff. These are the allegations of the statement of claim. The defendant filed an affidavit of defense by way of a demurrer, raising the legal question that, by reason of a covenant contained in the lease exempting the landlord from liability, the plaintiff has no cause of action. The court below sustained the affidavit of defense and entered judgment for the defendant, which action was assigned as error on the plaintiff's appeal.

The pertinent portion of the lease is paragraph seven, and it reads as follows: "In consideration of securing the within lease at the above stated rent, said lessee does hereby release and discharge said lessor, their successors, and assigns, from any and all liability for damage that may result from the bursting, stoppage, and leakage of any water pipe, steam pipe, gas pipe, sewer, basin, water closet and drain, and from all liability for any and all damage caused by water, gas, waste, and contents of said water pipes, gas pipes, steam heat pipes, sewers, basins, water closets and drains."

Plaintiff alleges that the damage was caused by the negligence of the defendant, and that the agreement does not exempt him from liability for his acts of active negligence. The lease provides that the landlord shall be relased "from all liability for any and all damage caused by water." The terms are emphatic—the word "all" needs no definition; it includes everything, and excludes nothing. There is no more comprehensive word in the language, and as used here it is obviously broad enough to cover liability for negligence. If it had been the intention of the parties to exclude negligent acts they would have so written the agreement. This paragraph of the lease is clear and unambiguous. No rules of construction are required to ascertain the intention of the parties. What was said by this court in Atherton v. Clearview Coal Co., 267 Pa. 425, 432, applies to this release: "A writing in which only words of definite and precise meaning, as commonly understood, are used, free from ambiguity, is always its own best interpreter, since the language used best discloses and reveals the intention, object, and purpose of the parties to it. . . . . . We find nothing in the situation of the parties that would justify us in giving to the language used any other interpretation of the contract than that which the language clearly imports. . . . . . It would be difficult to employ language more general and embracing than that here employed; it excepts nothing expressly, nor does

it by implication, unless it be wanton or wilful damage, and that is not pretended here."

The Superior Court, in Lerner v. Heicklen, 89 Pa. Superior Ct. 234, held that a covenant in a lease relieving the landlord from all "loss of property however occurring" is sufficient to release the lessor from all liability for loss caused by his negligence or that of his servants. The facts of that case were very similar to those of the case before us—the plaintiffs having sued in trespass to recover damages for injury to their goods caused by the negligence of the defendants in permitting water to escape from the pipes and plumbing apparatus on a floor occupied by the lessor. The case is directly in point, and correctly states the law applicable to this situation. To the same effect see Fera v. Child, 115 Mass. 132, and Tuttle v. Phipps, 219 Mass. 474.

The covenant in this lease against liability for acts of negligence does not contravene any policy of the law: Perry v. Payne, 217 Pa. 252; Lerner v. Heicklen, supra; Hopkins v. Sobra, 152 Ill. A. 273; Woodbury v. Post, 158 Mass. 140. It is a contract between persons conducting a strictly private business and relates entirely to their personal and private affairs, and so cannot be opposed to public policy. It would seem to be a matter of no interest to the public or the State. In Woodbury v. Post, supra, a contract between private individuals indemnifying against one's own negligence was sustained. Perry v. Payne, supra, is authority for the principle that, as between private individuals in their personal affairs, one may be indemnified against the results of his own or his servant's negligence, if the intention so to do is clearly expressed in the contract. This covenant does not fall within the reason of the rule that makes the stipulation of a common carrier against liability for negligence a nullity. It is not unreasonable to assume, as intimated in the quoted paragraph of the agreement, that this covenant resulted in a lower rental value than would otherwise have been demanded. The

parties had a right to bargain freely and agree upon their own terms.

Our conclusion is reinforced by the fact that in the absence of a contract, liability of a landlord for damage to goods of a tenant always depends upon negligence. It was to be free from this liability that defendant placed the covenant in the lease, and to say that it does not have that effect is to say that the covenant is meaningless, which would be incomprehensible under the circumstances. The parties meant something by what they said in their agreement, and where they used language so definite and precise there can be no doubt of their meaning, and it necessarily follows that their intention was to release the landlord "from all liability for any and all damage caused by water" resulting from negligence unless wanton or wilful. As said in Perry v. Payne, supra, and Lerner v. Heicklen, supra, all that the law insists on in the case of the tenant's waiver of his landlord's responsibility for losses resulting from his negligence is that it shall be plainly expressed. With that requirement the covenant of this lease fully complies. The decision of the question of law raised by the affidavit of defense was properly disposed of by the court below, and its judgment must be affirmed.

Judgment affirmed.