626 A.2d 98

TOPP COPY PRODUCTS, INC. and Topp
Telecommunications, Inc., Appellees

v.

Ernest SINGLETARY and Tony Noviello, t/a Nova
Construction Co. and Nova Construction, Inc.

**Appeal of Ernest SINGLETARY.**

Supreme Court of Pennsylvania.

Submitted Dec. 7, 1992.

Decided May 26, 1993.

C. Edward S. Mitchell, Gary L. Weber, Williamsport, for appellant.

J. David Smith, Joanne C. Ludwikowski, Williamsport, for Topp Copy, etc.

Jonathan E. Butterfield, Williamsport, for Tony Noviello, et al.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of Ernest Singletary (Appellant) from the opinion and order of the Superior Court reversing the order of the Court of Common Pleas of Lycoming County which grant-

ed summary judgment in favor of Appellant and remanded the matter to the trial court for further proceedings.

Appellant is the owner of a multi-story building in the City of Williamsport. Topp Copy Products, Inc. and Topp Copy Telecommunications, Inc., (Appellees) are in the business of selling and leasing office equipment and lease the first floor of Appellant's building. In an apartment located above Appellees' business, a toilet developed a leak, resulting in substantial water damage to Appellees' inventory stored in its leased unit.

Appellees brought suit against Appellant for the water damages it sustained in the Court of Common Pleas of Lycoming County, alleging breach of implied warranty of habitability for residential premises, breach of implied warranty for commercial premises, and negligence. Appellant filed a motion for summary judgment arguing that an exculpatory clause in its lease with Appellees effectively prevented any action against him on account of water damage caused by any broken plumbing fixture.[1] The Honorable Thomas C. Raup, President Judge of the Court of Common Pleas of Lycoming County, agreed that the exculpatory clause was applicable and granted summary judgment in favor of Appellant.

Appellees appealed to the Superior Court, which reversed, because in its view, the exculpatory clause was not specific enough to immunize Appellant from liability for his own acts of negligence. In reaching this conclusion, the Superior Court relied on our recent decision in *Ruzzi v. Butler Petroleum*, 527 Pa. 1, 588 A.2d 1 (1991), as dispositive of the requirements of the law when determining the enforceability of exculpatory clauses immunizing a landlord for his own acts of negligence.

1. Paragraph 19 of the lease provides in pertinent part:
   Said Lessee does hereby release and discharge said Lessor, his heirs or assigns, from any and all liability for damage that may result from the bursting, stoppage and leakage of any water pipe, gas pipe, sewer, basin, water-closet, steam pipe and drain, and from all liability for any and all damage caused by the water, gas, steam, waste and contents of said water pipes, gas pipes, steam pipes, sewers, basins, water-closets and drains.

*Topp Copy Products Inc. v. Singletary,* 404 Pa.Superior Ct. 459, 591 A.2d 298 (1991).

We granted allocatur in this matter to determine whether the specific requirements of *Ruzzi* are applicable when reviewing exculpatory clauses in leases and we now reverse.

It is generally accepted that an exculpatory clause is valid where three conditions are met. First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. *Princeton Sportswear Corp. v. H. & M. Associates,* 510 Pa. 189, 507 A.2d 339 (1986); *Employers Liability Assurance Corp. v. Greenville Business Men's Association,* 423 Pa. 288, 224 A.2d 620 (1966). In *Dilks v. Flohr Chevrolet,* 411 Pa. 425, 192 A.2d 682 (1963), we noted that once an exculpatory clause is determined to be valid, it will, nevertheless, still be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. In interpreting such clauses we listed as guiding standards that: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause. *Dilks,* at 434, 192 A.2d at 687.

Appellant argues that we have applied these considerations to an exculpatory clause in a lease identical to the one before us and found it to be valid and enforceable, and that this precedent is applicable to this exculpatory clause and dispositive of its enforceability. Appellant refers to our decision in *Cannon v. Bresch,* 307 Pa. 31, 160 A. 595 (1932), which considered a fact pattern similar to this case and an exculpato-

ry clause identical to that under consideration here. Appellant correctly notes that we held that the clause was valid and enforceable and determinative of the rights of the parties. The tenant in *Cannon* argued, as Appellees now argue, that the water damage was caused by the landlord's negligence and the clause did not relieve him from liability for his acts of active negligence.

In concluding that the clause was sufficiently precise we noted "the terms are emphatic—the word "all" needs no definition; it includes everything, and excludes nothing. There is no more comprehensive word in the language, and as used here it is obviously broad enough to cover liability for negligence. If it had been the intention of the parties to exclude negligent acts they would have so written in the agreement. This paragraph of the lease is clear and unambiguous. No rules of construction are required to ascertain the intention of the parties". *Cannon*, 307 Pa. at 34, 160 A. at 596.

In addition to concluding that the clause was clear and unambiguous, we specifically indicated in *Cannon* that the clause under consideration was not against public policy, was in a contract between persons relating to their own private affairs and that each party was a free bargaining agent. Since the landlord would always be responsible if he damaged the goods of his tenant, we were able to conclude that the exculpatory clause's very purpose was to exonerate him.

It was to be free from this liability that defendant placed the covenant in the lease, and to say that it does not have that effect is to say that the covenant is meaningless, which would be incomprehensible under the circumstances. The parties meant something by what they said in their agreement, and where they used language so definite and precise there can be no doubt of their meaning, and it necessarily follows that their intention was to release the landlord "from all liability for any and all damage caused by water" resulting from negligence unless wanton or willful ... [a]ll that the law insists on in the case of a tenant's waiver of his landlord's responsibility for losses resulting from his negli-

gence is that it shall be plainly expressed. With that requirement the covenant of this lease fully complies.

*Cannon,* 307 Pa. at 36, 160 A. at 597.

Since there was only one purpose for the clause, it was found to be sufficiently precise and invokable to protect the landlord from all liability including his own negligence. Such has been our view of the validity of such clauses when they appear in leases since 1932 and, without doubt, in reliance of this rule of law, the clause appeared in the lease between Appellant and Appellees in the same form as approved in *Cannon.*

Rather than apply *Cannon's* rule of law to this lease the Superior Court chose to apply our holding in *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991) as a more accurate statement of the law in interpreting the validity of this exculpatory clause.

In *Ruzzi,* we considered an indemnity clause in a construction contract entered into between the owners of a gasoline service station and a petroleum company. The contract covered the petroleum company's reconstruction of the service station for the owners and provided that the property owners would indemnify the petroleum company "from any and all liability for claims for loss, damage, injury or other casualty to persons or property, . . . caused or occasioned by any leakage, fire, explosion or other casualty occurring through any imperfection in, injury or damage to, or by reason of the installation, use, operation and/or repair of the said equipment or of the premises." We ruled that, in interpreting the validity and enforceability of indemnity clauses the law would not recognize as effective an agreement concerning negligent acts unless an express stipulation concerning the indemnitee's negligence was included in the document. Our authority for this rule of interpretation was found in *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907), which we held to be a well established rule of contract interpretation in such circumstances and reaffirmed its continuing viability.

This result is consistent with our law that has developed concerning the interpretation of clauses which relieve a party of liability for his own negligence, and as can be seen, *Perry* and *Butler* apply the general principle that the exculpatory language must be expressed in clear and unequivocal terms. In contracts of indemnity, this principle is applied with a force that requires the parties to state in express terms that the active negligence of the indemnitee will be assumed by the indemnitor.

As we stated in *Perry,* "The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it." *Perry,* 217 Pa. at 262, 66 A. at 557. Thus, *Perry* and *Ruzzi* are examples of how our general rules of contract interpretation for clauses which purport to relieve a party of responsibility for his own negligence are applied in the unique circumstance of an indemnity arrangement and should not be confused or misunderstood as stating a different rule as that which is expressed in *Cannon.* *Cannon* also stands for the same proposition of contract interpretation, i.e., that the provisions and terms of a lease must clearly and unequivocally spell out the intent to grant immunity and relief from liability, and is illustrative of how the general rule is applied when the interpretation of a lease is before the court.

To that extent, the Superior Court was in error when it applied *Perry* and *Ruzzi* in its consideration of the validity and enforceability of an exculpatory clause in a lease. The appropriate rule of law for lease interpretations was and continues to be *Cannon,* which as already discussed stands on its own as a valid application in lease settings of how our general rules requiring specificity are satisfied.

All that the law requires in the case of a tenant's waiver of his landlord's responsibility for losses resulting from his negligence is that it shall be plainly expressed. *Cannon*

determined long ago that this covenant fully complies with the requirements of the law, and we conclude that the trial court properly entered summary judgment in favor of Appellant.

The opinion and order of the Superior Court are reversed and the order of the Court of Common Pleas granting summary judgment in favor of Appellant is reinstated.

FLAHERTY, J., files a concurring opinion.

MONTEMURO, J., files a dissenting opinion in which LARSEN, J., joins.

FLAHERTY, Justice, concurring.

I join the opinion authored by Mr. Justice Papadakos but continue in my belief that *Ruzzi v. Butler Petroleum, Co.,* 527 Pa. 1, 588 A.2d 1 (1991), was wrongly decided as expressed in my dissenting opinion published in that case.

MONTEMURO, Justice, dissenting.

Because I cannot fathom how the words "any and all liability" can be determined to be words of general import in one case, and words of precision in another, I dissent.

As the majority correctly notes, an exculpatory clause will be valid where three conditions are satisfied: (1) the clause does not violate any public policy; (2) the contract relates entirely to the private affairs of the parties; and (3) the contract is not a contract of adhesion to which one party simply adheres to a contract because he has no power to alter it. *Kotwasinski v. Rasner,* 436 Pa. 32, 258 A.2d at 865 (1969). Even if the clause is determined to be valid, four other conditions must be fulfilled, in order to effectively relieve a party from liability. First, we require that contracts providing for immunity from liability for negligence be construed strictly since they are not favorites of the law. *Id.* at 39, 258 A.2d at 868. Secondly, such contracts must spell out the intention of the parties with the greatest particularity, and show the intent to release from liability beyond doubt. *Id.* No inference from words of general import can establish such

an intent. *Id.* Next, such contracts must be construed against the party who seeks immunity from liability. *Id.* Finally, the burden to prove immunity is placed upon the party who is seeking to avoid liability. *Id.*

The foregoing conditions have been required and applied by this court consistently, over a long period of time, without variation, both to exculpatory clauses, *See e.g., Kotwasinski v. Rasner,* 436 Pa. 32, 258 A.2d 865, *Dilks v. Flohr Chevrolet, Inc.,* 411 Pa. 425, 192 A.2d 682 (1963), *Employers Liability Assurance Corporation v. Greenville Business Men's Association,* 423 Pa. 288, 224 A.2d 620 (1966), and *Princeton Sportswear Corporation v. H & M Associates,* 510 Pa. 189, 507 A.2d 339 (1986); and to indemnity clauses; *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907), *Pittsburgh Steel Co. v. Patterson–Emerson–Comstock, Inc.,* 404 Pa. 53, 171 A.2d 185 (1961), and *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991).

Instantly, all parties agree that the exculpatory clause in question is valid; however, its enforceability is questioned. The controversy hinges on whether the clause is sufficiently precise to be enforceable, or whether it uses words of general import. If the clause is determined to contain words of general import, it will not be enforced.[1] If, however, we determine that the words "any and all liability" are not words of general import, it will be enforced.

In reaching its conclusion that the clause is enforceable in the instant case, the majority relied on *Cannon v. Bresch,* 307 Pa. 31, 160 A. 595 (1932). In *Cannon,* this court held that the

---

1. As Judge Beck noted in her majority opinion for the Superior Court:
    The reason the law looks with disfavor on exculpatory clauses is that they excuse defendants from maintaining reasonable standards of care. Restatement (Second) of Contracts Section 195, comments a and b (1981); Annotation, *Validity of Exculpatory Clause in Lease Exempting Lessor from Liability,* 49 A.L.R.3d 321, 325 (1973). Under such clauses defendants may be negligent with impunity. Because generally the law seeks to discourage negligence and because generally the law requires that wrongdoers be liable for their wrongful acts, the validity and enforceability of exculpatory clauses are interpreted in a limiting fashion and the language is strictly construed against the clause's author.
    *Topp Copy Products, Inc. v. Ernest Singletary,* 404 Pa.Super. 459, 591 A.2d 298 (1991).

words "any and all" were very specific and broad enough to cover liability for negligence. While *Cannon* admittedly involved the interpretation of an exculpatory clause like the one involved in this case, the continuing validity of *Cannon* has been eroded over the years. A number of Superior Court and federal court decisions have implicitly questioned the continuing validity of *Cannon. See e.g., Richard's 5 & 10 v. Brooks Harvey Realty Investors,* 264 Pa.Super. 384, 399 A.2d 1103 (1979), *Lincoln Pulp & Paper Co., Inc. v. Dravo Corporation,* 436 F.Supp. 262 (1977) (interpreting Pennsylvania law), and *Neville Chemical Company v. Union Carbide Corporation,* 422 F.2d 1205 (3rd Cir.1970).

More important, just two years ago, this court in *Ruzzi v. Butler Petroleum Company,* 527 Pa. 1, 588 A.2d 1 (1991), held that the words "any and all liability" in an indemnity contract were words of general import and were not broad enough to cover liability for negligence. The majority in *Ruzzi*[2] held that

> We must assume that the parties knew that the law gives to the words used herein a specific meaning and that the words, therefore, must be interpreted in their legal sense. We must also assume that the parties wrote this agreement in conformity to these well established rules of contract construction. That being the case, we conclude that the only intent that can be gleaned from this document is that the parties did not intend to indemnify for acts of the indemnitee's negligence, since words of general import are used. We can discern no reason to abandon the *Perry* rule of contract interpretation which is still a valuable rule of construction, rooted in reason and authority and reject Butler Petroleum's contrary arguments.

**2.** The indemnity clause that was being interpreted in *Ruzzi* was as follows:

> [The Zinsers] ... exonerate, discharge, and agree to protect and save harmless and indemnify [Butler Petroleum] ... from any and all liability for claims for loss, damage, injury or other casualty to persons or property ... caused or occasioned by any leakage, fire, explosion or other casualty occurring through any imperfection in, injury or damage to, or by reason of the installation, use, operation and/or repair of the said equipment or of the premises.

*Ruzzi*, 527 Pa. at 9, 588 A.2d at 5. *See also, Employers Liability Assurance Corporation v. Greenville Business Men's Association*, 423 Pa. 288, 224 A.2d 620.

Rather than apply this recent holding to the instant case, the majority chooses to apply the 1932 holding in *Cannon*. In support of this decision, the majority notes that *Cannon*, like the instant case, dealt with an exculpatory clause while *Ruzzi* dealt with an indemnity clause. Although I am cognizant of the several differences between exculpatory clauses and indemnity clauses, the nature of these clauses is so similar that the rules of law applicable to one should be applicable to the other. In fact, the rules of construction, as outlined above, applied to determine the validity and enforceability of exculpatory and indemnity clauses are identical. That is, both clauses must be construed strictly against the drafter, must spell out the intention of the parties with great particularity without the use of words of general import, and the burden to prove immunity is placed upon the party seeking to avoid liability. As this court has previously stated

> while an exculpatory clause—which deprives one contracting party of a right to recover for damages suffered through the negligence of the other contracting party—differs somewhat from an indemnity clause—which effects a change in the person who ultimately has to pay the damages—yet there is such a substantial kinship between both types of contracts as to render decisions dealing with indemnity clauses applicable to decisions dealing with exculpatory clauses, and vice versa.

*Dilks*, 411 Pa. at 435, n. 11, 192 A.2d at 687.

Consequently, I agree with the Superior Court and would apply the more recent rationale of *Ruzzi* to this case. If the words "any and all liability", examined under identical standards, are words of general import in *Ruzzi*, then they are words of general import in this case as well. I simply cannot understand why the same words, interpreted under the same standards, can be sufficiently precise in one case, yet be words of general import in another. The law on exculpatory clauses has not been static since *Cannon*. There has been a trend in

the cases which disfavors the liberal interpretation of these clauses given in *Cannon.* The *Ruzzi* decision is more consistent with the general rule of contract interpretation which requires contracts to be construed strictly against the drafter, and which disfavors contracts providing for immunity of parties from their own negligent acts. To protect itself from liability, all a lessor needs to do is to expressly stipulate in a contract of its own making that it will be relieved of responsibility for damages "caused by or resulting from the negligence of the lessor." *Jacob Siegel Co. v. Philadelphia Record Co.,* 348 Pa. 245, 246, 35 A.2d 408, 409 (1944). Accordingly, I dissent and I would affirm the decision of the Superior Court.

LARSEN, J., joins this dissent.