

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2003

# Chams Jewelry Art v. Haefner

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2911

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Chams Jewelry Art v. Haefner" (2003). *2003 Decisions.* Paper 128.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/128

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 02-2911
_____

CHAM'S JEWELRY ART;
FASHION GEM JEWELRY,
t/a
Yang Company
GEMS AND JEWELRY PALACE, INC.


v.


RICHARD C. HAEFNER, Individually;
RICHARD C. HAEFNER,
t/a
Lost Dutchman Gembor,
a/k/a
10th Annual Lost Dutchman Gemboree;
LEBANON VALLEY EXPOSITION, CORP.,
a/k/a Lebanon Valley Expo. Corp.;
LESTER F. RITTLE, Individually;
LESTER F. RITTLE,
t/a
Lebanon County Auxillary Police;
LEBANON COUNTY AUXILLARY POLICE


Fashion Gem and Jewelry, Inc.;
Gems and Jewelry Palace, Inc.

Appellants


_____


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on November 7, 2003

Before: McKEE, SMITH, and GREENBERG, Circuit Judges,
(Filed: November 7, 2003)

_____

OPINION OF THE COURT

_____

SMITH, Circuit Judge

I.

Plaintiffs are three New York corporations which are vendors of gemstones and

jewelry.   Each rented space and sold their wares at the Tenth Annual Lost Dutchman

Gemboree ("Gemboree") in Lebanon, Pennsylvania on August 14-18, 1996.  On August

16, 1996, a portion of plaintiffs' inventory was stolen.  On the evening that the theft

occurred, the organizer of the Gemboree, defendant Richard Haefner ("Haefner") was

certain that the windows and doors to the exposition center were closed and locked,

because two employees of Lester Rittle's ("Rittle") security company had checked the

building. Haefner had hired Rittle along with the Lebanon County Auxiliary Police

("Police") to provide security at the event.  One individual hired by Rittle provided

security during the night of August 16, 1996.

Prior to renting space for the Gemboree, plaintiffs each signed an "Application for Dealer Space." App. at S.A. 92a. The application included the following clause:

> LIABILITY. Neither management nor Lebanon Fair Grounds, nor any of their officers, agents, employees, or other representatives shall be held accountable or liable for and the same hereby releases from accountability or liability for any damage, loss, harm or injury to the person or any property of the dealer, or any of dealer's officers, agents, employees or other representatives resulting from theft, fire, water, accident or any other cause, and neither management nor Lebanon Fair Grounds will obtain insurance against such damage, loss, harm or injury. Dealer agrees to carry liability insurance as a condition for participating in the show. The license herein granted is revocable at any time by management in the event a dealer shall violate this agreement. Dealer further agrees to indemnify, defend and protect management against and hold and save management harmless from any and all claims, demands, suits, liability, damages, loss, costs, attorney fees and expenses of whatever kind which might occur, including but not limited to claims of damages or loss to Lebanon Fair Grounds property, or out of any damage, loss, harm, or injury to the person or any property of the dealer or any of his officers, agents, employees or representatives.

App. at S.A. 93a. The Application also provided for security arrangements:

> SECURITY. Management will provide security service 24 hours a day. Security will be in effect during the entire show and will cease at 8 pm on closing day. Dealer agrees to hold management and Lebanon Fair Grounds harmless for any loss, pilfering, theft or damage to dealer's merchandise or other property from all causes whatsoever. Dealer agrees to provide adequate insurance for his own merchandise and other property; and agrees that failure to have such insurance constitutes a waiver of any claim against management or Lebanon Fair Grounds.

*Id*. Plaintiffs procured no insurance against theft or loss. Additionally, the Application for Dealer Space qualified the acceptance of space, with the following clause:

> ACCEPTANCE OF APPLICATION FOR BOOTH SPACE. This contract

3

shall not become effective unless one copy of the application is signed by both the dealer and management, and the appropriate deposit is paid. There are no agreements, written or oral, by or between the parties pertaining to this contract, except those contained herein.

*Id.*

Subsequent to the theft, plaintiffs sought recovery from Haefner. Haefner filed cross claims against defendants, Lebanon Valley Exposition Corporation, as well as Rittle and the Police. The District Court granted summary judgment against plaintiffs on March 30, 2001. The District Court determined that the parties were bound by the terms of their written agreement, which by its terms precluded any finding of liability against Haefner. Judgment was entered against plaintiffs the same day. Plaintiffs Fashion Gem Jewelry and Gems and Jewelry Palace filed a timely notice of appeal.

II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a District Court's summary judgment determinations. *Woodside v. School District of Philadelphia Bd. of Education*, 248 F.3d 129, 130 (3d Cir. 2001); *Sharrar v. Felsing*, 128 F.3d 810, 817 (3d Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986); Fed. R. Civ. Proc. 56(c).

III.

The question before us is simply whether the language of the Dealer Space Applications is binding upon the parties. As plaintiffs correctly assert, it is the intent of the parties which should guide the court when interpreting contracts. Pl. Br. at 11; *O'Farrell v. Steel City Piping Co.*, 403 A.2d 1319, 1324 (Pa. Super. 1979) ("In construing a contract, a court's paramount consideration is the intent of the parties"). Defendant counters that the express terms of the written contract govern. Defendant is correct–only where a contract is ambiguous may the court look beyond the clear text of the contract. *See, e.g.*, *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980). A contract is ambiguous when it is susceptible to more than one reasonable interpretation. *Pacitti by Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999). "[W]hen the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Id.* at 773.

These contracts can be read in only one manner. Where the plaintiffs failed to obtain insurance for their merchandise, they would waive their rights to bring any claim against defendants. Plaintiffs failure here to purchase insurance coverage is fatal to their claims.

We further agree with the District Court's determination that the exculpatory clause here relieves Haefner and the other defendants of any liability. An exculpatory clause is enforceable where the "language of the parties is clear that a person is being

5

relieved of liability for his own acts of negligence." *Topp Copy Products, Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993). Here, plaintiffs agreed to hold defendants harmless for "any loss . . . from all causes whatsoever." App. at S.A. 93a, 95a. As the Pennsylvania Supreme Court explained in *Cannon v. Bresch*, 307 Pa. 31, 34 (Pa. 1932),

> It is clear that the term all is sufficient to encompass negligence. The terms are emphatic -- the word 'all' needs no definition; it includes everything, and excludes nothing. There is no more comprehensive word in the language, and as used here it is obviously broad enough to cover liability for negligence.

Here, Haefner was released from "all" liability. We need look no further. For the foregoing reasons the judgment of the District Court will be affirmed.

 /s/ D. Brooks Smith
Circuit Judge

6