**Singh v. Pocono Medical Center, Inc.**

C.P. of Monroe County, No. 5770 CV 2011

*Sean P. McDonough*, for plaintiff.
*Larry B. Selkowitz and Bruce Coyer*, for defendants.

MARK, *J.*, December 30, 2013—This case is before the court on defendants' motion for summary judgment. For the reasons that follow, we will grant the motion in part and deny the motion in part.

### Factual and Procedural Background

The facts and procedural history of this case are detailed at length in our opinion and order dated December 17,

2012 ("prior opinion"), which addressed defendant's preliminary objections. In that order we dismissed all but one of the counts in plaintiffs second amended complaint, leaving only count IV, a claim for breach of contract. Subsequently, defendants filed an answer.[1] Thereafter, on June 17, 2013, defendant filed the motion currently pending before the court along with a brief in support. Plaintiff responded in kind, and having heard argument on the matter on September 3, 2013, and having requested and received supplemental briefs on one of the issues raised in the motion, we are now ready to rule on defendants' motion for summary judgment.

## Discussion

Under the Pennsylvania Rules of Civil Procedure, summary judgment is appropriate where:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the

---

1. After we issued the prior opinion, plaintiff filed a petition seeking amendment of our order to include language that would permit him to seek an interlocutory appeal. On January 21, 2013, we denied plaintiff's petition. Plaintiff did not further pursue an interlocutory appeal.

cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. Summary judgment may be granted only in cases where the right is free and clear from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 562 A.2d 279, 280 (Pa. 1989). Typically, the moving party has the burden of proving the nonexistence of any genuine issue of material fact. *Thompson*, 412 A.2d at 469. The record must be viewed in light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Co.*, 264 A.2d 597 (Pa. 1970).

In response to a motion for summary judgment, the non-moving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Phaff v. Gerner*, 303 A.2d 826 (Pa. 1973). In ruling on a motion for summary judgment, the court may consider the pleadings, depositions, answers to interrogatories, admissions, and supporting affidavits. Pa.R.C.P. 1035.1.

In their brief, defendants pose four questions for our consideration. First, defendants ask whether summary judgment should be granted as to defendant Jonathan Goldner, D.O. ("Dr. Goldner"), who was not a party to a contract with plaintiff. Second, defendants ask whether the breach of contract claim should be dismissed because plaintiff's claim for damages is barred by the Health Care Quality Improvement Act, 42 U.S.C. § 11101 *et seq.*, and the Pennsylvania Peer Review Protection Act, 63 P.S. § 425.1 *et seq.* Third, defendants ask whether summary judgment should be granted as to all defendants because there was no breach of contract. Finally, defendants ask whether summary judgment should be granted as to all

defendants under the immunity provisions of defendant Pocono Medical Center's Staff Bylaws, which form the basis of one of three contracts plaintiff alleged was breached.

At argument, plaintiff conceded that Dr. Goldner was not a party to a contract with plaintiff and was willing to dismiss all remaining claims against Dr. Goldner. Accordingly, we will grant defendants' motion for summary judgment as to Dr. Goldner.

Defendants' remaining arguments concern the actual contracts plaintiff entered into with defendants Pocono Medical Center and Pocono Health Systems ("hospital"). The parties entered into three contracts. In the contract governed by the Staff Bylaws, plaintiff contracted in September of 2006 with hospital to undertake various medical staff services in exchange for various medical staff privileges ("Staff Bylaws Contract"). Also in September of 2006, plaintiff entered into an agreement with hospital to become the medical director of hospital's catheterization lab ("Cath Lab Contract"). The parties entered into a third contract under which plaintiff would serve as an on-call physician in the emergency room ("ER Contract").

Plaintiff conceded at argument that the HCQIA applies to the Cath Lab Contract and to the ER Contract, but asserted that it did apply to the Staff Bylaws Contract. Hospital offered a concession of its own at argument, admitting that the Staff Bylaws Contract was, at least at one point, an enforceable contract between plaintiff and hospital. However, hospital argued that, because plaintiff was no longer a member of the staff when the alleged breach occurred, neither party was bound by

its terms. In the alternative, hospital argued, even if the Staff Bylaws Contract was still in effect at the time of the alleged breach, any claims for damages are barred by the immunity provisions of the contract.

Therefore, the only issues before the court are: (1) whether the Staff Bylaws Contract between plaintiff and defendants was in effect at the time of the alleged breach; and (2) if so, whether plaintiff's claim for damages is barred by the immunity provisions of the Staff Bylaws.

As noted, no dispute exists as to the existence, at least at some point in time, of the Staff Bylaws Contract. On September 19, 2006, plaintiff entered into the Staff Bylaws Contract with hospital, which, generally speaking, required plaintiff to undertake various medical staff services in return for numerous medical staff privileges, including membership on Hospital's Peer Review Committee, as outlined in the Staff Bylaws, a document consisting of sixty-four pages. This contract remained in place until September 12, 2008, when plaintiff, as he was free to do, resigned his staff privileges.

In his second amended complaint, plaintiff alleges that hospital violated the Staff Bylaws Contract in a number of different ways. Specifically, plaintiff avers that, beginning in March of 2007 — six months after the parties entered into the Staff Bylaws Contract and eighteen months before plaintiff terminated the contract upon his resignation of his staff privileges — hospital prevented plaintiff from participating in peer review activities of a Dr. John Doe and advocating his concerns regarding Dr. John Doe's practices or hospital's handling of a complaint regarding Dr. John Doe's conduct.

It is well-settled that the staff bylaws of a hospital

"constitute the terms of a legally binding contract between the hospital and the doctors on its staff." *Miller v. Indiana Hosp.*, 419 A.2d 1191, 1193 (Pa. Super. 1980) (citing *Berberian v. Lancaster Osteopathic Hosp. Assoc.*, 149 A.2d 456 (Pa. 1959)). "The hospital will, moreover, be held to a standard of strict compliance with its bylaws." *Id.* The parties do not dispute that they entered into the Staff Bylaws Contract on September 19, 2006. Despite Hospital's contention otherwise at argument, there is nothing in the record that supports the notion that the parties were not still bound to the terms of the agreement from March of 2007, the approximate time when plaintiff alleges the hospital's breach first occurred, until September 12, 2008, when plaintiff resigned his staff privileges. It follows, then, that the Staff Bylaws Contract was in effect at the time of the alleged breach, and the parties were subject to its provisions.

This conclusion leads inexorably to the second question before us, whether the immunity provisions of the Staff Bylaws Contract preclude plaintiff's claim for damages. The Staff Bylaws Contract contains an express immunity provision entitled article XVI — release and immunity from liability. The release is an "express condition[] to any practitioner's application for Medical Staff membership or the exercise of clinical privileges at the hospital.... and every practitioner accepts the following conditions for the duration of the practitioner's association with the hospital." (Pl.'s Br. Ex. A.) In pertinent part, the release reads:

1. To the fullest extent permitted by law, the applicant or member extends absolute immunity and release from civil liability and damages to the medical staff, the

board of directors, their authorized representatives and any third party arising from any acts, communications, reports, recommendations or disclosures involving the applicant or member, concerning activities undertaken pursuant to these Bylaws and Rules and Regulations including, but not limited to, the following:

a. Application for appointment and for clinical privileges;

b. Periodic reappraisals for reappointment and for clinical privileges;

c. Corrective action, including summary suspension;

d. Hearing and appellate reviews;

e. Medical audit;

f. Utilization review;

g. Risk management evaluation; and

h. Other hospital, departmental or committee activities related to patient, professional conduct and peer review.

(Pl.'s Br. Ex. A.)

As the release makes clear, by agreeing to the Staff Bylaws, plaintiff released from civil liability "the medical staff, the board of directors, their authorized representatives and any third party." What is not as clear, at least on the face of the release, is who or what entities are encapsulated by the terms "medical staff," "board of directors," and "authorized representatives and any third party." Helpfully, the contract contains a definitions section, which defines both "medical staff" and "board of directors." "medical staff" is defined as "[t]he medical staff of Pocono Medical

Center including all medical staff categories described and defined in the Bylaws." "board of directors" is defined simply as the "[t]he board of directors of Pocono Medical Center." (Pl.'s Br. Ex. A.) While the definition of board of directors references Pocono Medical Center, one of the two hospital defendants, neither of these definitions uses the word "hospital" or encompasses Pocono Medical Center or Pocono Health System, Inc. In fact, "hospital" is separately defined as "[t]he Pocono Medical Center." (Pl.'s Br. Ex. A.)

Generally speaking, liability releases are not favored by the law. *Zimmer v. Mitchell & Ness*, 385 A.2d 437, 439 (Pa. Super. 1978). They will, however, be found valid if: (1) the clause does not contravene public policy; (2) the contract is between persons relating entirely to their own private affairs; and (3) each party is a free bargaining agent to the agreement so that the contract is not one of adhesion. *Topp Copy Products, Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993); *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1189 (Pa. 2010). "The courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language and interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the parties when the release was given." *Fortney v. Callenberger*, 801 A.2d 594, 597 (Pa. Super. 2002). When interpreting such language, four guiding standards must be considered: (1) because exculpatory language is not favored by the law, the contract language must be strictly construed; (2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; (3) ambiguous

language in the contract must be construed against the party seeking immunity from liability; and (4) the burden of establishing immunity is upon the party invoking protection under the clause. *Topp Copy*, 626 A.2d at 99.

With these principles in mind, it is difficult to conceive that the release contained in the Staff Bylaws Contract absolves hospital of any and all liability for a breach of the contract's terms. Strictly construed, the release simply cannot be read to absolve hospital of liability for a breach of the Staff Bylaws Contract. Read plainly, the quoted language from the release itself indemnifies only "the medical staff, the board of directors, their authorized representatives and any third party arising from any acts, communications, reports, recommendations or disclosures involving the applicant or member, concerning activities undertaken pursuant to the" Staff Bylaws Contract. Nowhere in the release does the word "hospital," as that term is expressly contemplated in the definition section, appear, and there is nary a mention of either of the hospital defendants by name. The term "hospital," as defined by the contract, is used in what might be considered the preamble of the release, but only to indicate that agreeing to the release is an express condition of the "exercise of clinical privileges at the hospital." Nothing in this preamble, and certainly nothing in the release provision itself, indicates that hospital is immune, only the medical staff, the board of directors, their authorized representatives and any third party.

Additionally, because hospital seeks protection under this provision, it carries the burden of establishing immunity. It has, however, failed to do so. Instead, in support of its position that it is protected by this provision, hospital simply quotes the immunity provision and states in

a conclusory manner that this provision applies to hospital and it must be enforced just as any of the other provisions might be enforced. (Def.'s Br. at 17-18.) Despite having the opportunity to do so within its supplemental brief, hospital does not parse the language of the provision or offer any other analysis as to the applicability of the provision. Hospital merely states in blanket fashion that the immunity provision shields hospital from all claims. This is particularly troubling in light of our prior opinion, in which we admonished both parties for failing to offer anything more than conclusory arguments in regard to the applicability of the HCQIA to many of plaintiff's original claims. Regardless, hospital has failed to carry its burden of demonstrating that the immunity provision indemnifies it from liability for claims arising under the Staff Bylaws Contract. This, coupled with the fact that the provision itself, strictly construed, does not grant immunity to hospital, requires us to deny hospital's motion as to plaintiff's claim for breach of the Staff Bylaws Contract.

It would appear, then, that the sole question remaining in this case is whether Hospital breached the Staff Bylaws Contract it had entered into with plaintiff. That, however, is a question of fact better left for trial.

Accordingly, we enter the following:

## ORDER

And now, this 30th day of December, 2013, it is ordered that defendants' motion for summary judgment is granted in part and denied in part, as follows:

1. Summary judgment is entered in favor of defendant Jonathan Goldner, D.O. and against plaintiff Karandeep Singh, M.D., and Dr. Goldner is dismissed as a party.

2. Plaintiff's claims for breach of the Cath Lab Contract and the ER Contract are dismissed.

3. Defendants' motion is denied with respect to plaintiff's claim for breach of the Staff Bylaws Contract. This case will proceed solely on this claim.