2016 PA Super 11

| | |
|---|---|
| MELINDA HINKAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GAVIN PARDOE & GOLD'S GYM, INC., AND GOLD'S GYM INTERNATIONAL, INC. AND TRT HOLDINGS, INC. | |
| Appellees | No. 165 MDA 2014 |

Appeal from the Order Entered January 7, 2014
In the Court of Common Pleas of Union County
Civil Division at No(s): 12-0375

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
         SHOGAN, J., LAZARUS, J., OTT, J., STABILE, J., and JENKINS, J.

DISSENTING OPINION BY LAZARUS, J.:          **FILED JANUARY 22, 2016**

As I disagree with the learned majority's analysis regarding the enforceability of the exculpatory clause at issue, I respectfully dissent.  The majority concludes that the clause was both valid and enforceable under the standard set forth in ***Topp Copy Products, Inc. v. Singletary***, 626 A.2d 98 (Pa. 1993) and ***Employers Liability Assurance Corp. v. Greenville Business Men's Association***, 224 A.2d 620 (Pa. 1966) (the "***Topp Copy/Employers Liability***" standard).  While I agree with the structure of this analysis, I depart from the majority's conclusion because I believe: 1) an exculpatory clause in the context of a health club membership contravenes public policy; and 2) the contract language, construed strictly,

is ambiguous with regard to whether personal training sessions are included within the standard health club membership.

Under the **Topp Copy/Employers Liability** standard, an exculpatory clause will not be given force unless it meets conditions for validity and enforceability. As a threshold matter, an exculpatory clause will be found valid where the following conditions are met:

> First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion.

**Topp Copy Prods. v. Singletary**, 626 A.2d 98, 99 (Pa. 1993).

As stated in the Restatement (Second) of Torts, "[t]here is no general policy of the law which prevents the parties from agreeing that the defendant shall be under no such general or specific duty to the plaintiff." Restat. 2d of Torts, § 496B (2nd ed. 1979). Furthermore, "[w]here such an agreement is freely and fairly made, between parties who are in an equal bargaining position, and there is *no social interest with which they interfere*, it will generally be upheld. **Id.** (emphasis added).

Though exculpatory clauses are generally upheld, this Court has recognized that "lying behind these contracts is a residuum of public policy which is antagonistic to carte blanche exculpation from liability." **Phillips Home Furnishings, Inc. v. Continental Bank**, 331 A.2d 840, 843 (Pa. Super. 1974) (**rev'd on other grounds**, 354 A.2d 542, (Pa. 1976)). Thus, our case law has "developed the rule that these provisions would be strictly

construed with every intendment against the party seeking their protection." *Id.* Furthermore, the evolution of "economic and social necessities" have led courts to find that "in certain situations and relations express agreements by which one party assumes the risk of another's conduct could not, in good conscience, be accepted." *Id.*

In *Phillips*, we identified several categories of situations and relations where contracts against liability have been found inimical to public policy, including: 1) employer-employee relationships; 2) where one party is charged with a duty of public service; 3) public utilities; 4) common carriers; 5) carriers; 6) hospitals; and 7) airports. *Id.* Additionally, "[c]ourts have been particularly sensitive to the public interest in considering contracts that involve health and safety." *Leidy v. Deseret Enterprises, Inc.*, 381 A.2d 164, 168 (Pa. Super. 1977).

In *Leidy*, this Court reversed the trial court's entry of judgment on the pleadings in an action filed against a spa for injuries alleged by one of its members. The plaintiff alleged that she had been referred to the spa for post-operative treatment and that injury resulted when the spa's therapist administered treatment contrary to her doctor's instructions. *Id.* at 166. The defendant spa sought dismissal of the case based on release language in the membership agreement signed by the plaintiff. *Id.* In remanding the case, this Court reasoned that the contract at issue "clearly concerned health and safety" and identified a public interest in "assuring that those claiming

to be qualified to follow a doctor's orders are in fact so qualified, and accept responsibility for their actions." *Id.* at 168.

Like the spa membership in **Leidy**, the contract at issue in this case implicates health and safety concerns. By marketing and providing personal training services, the Appellees purport to provide for the physical health of Gold's Gym members. The public has an interest in assuring that those who hold themselves out to be qualified[1] to provide these services, and profit therefrom, do not disregard their duty of care and cause harm to the people who rely on their professional services. An exculpatory clause in the context of a personal training agreement interferes with this public interest. Therefore, I would find this clause invalid as it contravenes public policy. **Topp Copy**, 626 A.2d at 99.

---

[1] On its website, Gold's Gym advertises the following:

> We demand the best from our personal trainers, so they can demand the best from you. Our personal trainers have to meet high standards of excellence in exercise physiology, nutrition, anatomy, training program development, exercise application, health screening, and fitness assessments. Every personal trainer has to pass the Gold's Fitness Personal Trainer Certification course and exam, in addition to their national accreditation. But most importantly, our personal trainers excel at applying their knowledge to all walks of life, from athletes to seniors.

*Our Trainers*, GOLD'S GYM, http://www.goldsgym.com/our-trainers/ (last visited Dec. 14, 2015).

To support this public policy argument, we recognize the public interest manifested in Pennsylvania's Health Club Act (the "Act"), 73 P.S. §§2161-2177. Although the statute provides primarily economic protections to consumers, it also reflects a broader interest in providing access to health club facilities free from oppressive contract terms. The preamble to the Act states:

> The purpose of this act is to safeguard the public interest against fraud, deceit and financial hardship and to foster and encourage competition, fair dealing and prosperity in the field of health club services by prohibiting false and misleading advertising and dishonest, deceptive and unscrupulous practices by which the public has been injured in connection with contracts for health club services.

Act 1989, Dec. 21, P.L. 672, No. 87. The balance of the Act provides, *inter alia*, requisite contract provisions, limitations on contract duration and initiation fees, and various grounds for rendering membership contracts voidable. *See* 73 P.S. §§ 2163-2167.

While the Act aims to protect consumers from "deceptive and unscrupulous practices," at least one other state legislature has taken the extra step to specifically void exculpation clauses in the context of certain recreational establishments, including gyms and fitness centers. In New York, for example, membership and admission agreements for recreational activities are governed by the following:

> Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such

facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, *shall be deemed to be void as against public policy and wholly unenforceable*.

N.Y. Gen. Oblig. § 5-326 (emphasis added). The language above reflects a public policy interest in protecting consumers of recreational activities from waiving the right to seek compensation for the negligence of the purveyors of such activities.

Although Pennsylvania's Act does not go so far as to automatically void liability waivers, the Act's purpose of protecting health club patrons from "deceptive and unscrupulous practices" could be read to encompass such a preclusion. In the absence of a clearer statement from our legislature, Pennsylvania courts are left to analyze exculpation clauses on a case-by-case basis under the framework of **Topp Copy/Employers Liability**. As stated previously, I would find the exculpatory clause at issue in this case invalid as it contravenes public policy to enforce such provisions in the context of a contract for personal training services at a gym. Assuming, *arguendo*, that the clause is valid, I would remand the case, nonetheless, because the terms of the waiver itself do not specifically apply to personal training services.

Under the **Topp Copy/Employers Liability** standard, a facially valid exculpatory clause will not be given effect unless it is found enforceable.

> [O]nce an exculpatory clause is determined to be valid, it will, nevertheless, still be unenforceable unless the language of the

parties is clear that a person is being relieved of liability for his own acts of negligence. In interpreting such clauses we listed as guiding standards that: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

***Topp Copy***, 626 A.2d at 99. With these rules of interpretation in mind, I now turn to the exculpatory language at issue in the immediate matter.

The membership agreement signed by Appellant contained the following provision:

**WAIVER OF LIABILITY; ASSUMPTION OF RISK:** Member acknowledges that the use of Gold's Gym's facilities, equipment, services and programs involves an inherent risk of personal injury to Member and Member's guests and invitees. Member voluntarily agrees to assume all risks of personal injury to Member, Member's spouse, children, unborn children, other family members, guests of invitees and *waives any and all claims or actions that Member may have against Gold's Gym, any of its subsidiaries or other affiliates and any of their respective officers, directors, employees, agents, successors and assigns for any such personal injury* (and no such person shall be liable for to [sic] Member, Member's spouse, children, unborn children, other family members, guests or invitees for any such personal injury), including, without limitation (i) injuries arising from use of any exercise equipment, machines and tanning booths, (ii) injuries arising from participation in supervised or unsupervised activities and programs in exercise rooms, running tracts [sic], swimming pools, hot tubs, courts or other areas of any Gold's Gym, (iii) injuries or medical disorders resulting from exercising at any Gold's Gym, including heart attacks, strokes, heat stress, sprains, broken bones and torn or damaged muscles, ligaments or tendons and (iv) accidental injuries within any Gold's Gym facilities, including locker rooms, steam room,

whirlpools, hot tubs, spas, saunas[,] showers and dressing rooms. Member acknowledges that (x) Gold's Gym does not manufacture any of the fitness or other equipment at its facilities and (y) Gold's Gym does not manufacture any vitamins, food products, sports drinks, nutritional supplements or other products sold at its facilities; accordingly, neither Gold's Gym, any of its subsidiaries or other affiliates nor any of their respective officers, directors, employees, agents, successors or assigns shall be held liable for any such defective equipment or products. Member shall indemnify each of Gold's Gym, its subsidiaries and other affiliates and each of their respective officers, directors, employees, agents, successors and assigns (and "Indemnified Party") and save and hold each of them harmless against and pay on behalf of or reimburse any such Indemnified Party as and when incurred for any Losses which such Indemnified Party may suffer, sustain or become subject to, as a result of, in connection with, relating or incidental to or by virtue of any claim that is the subject of the waiver set forth above. The provisions of this paragraph shall survive the termination of this Agreement and Member's membership.

Plaintiff's Exhibit 2A, Membership Agreement dated 7/5/10 (emphasis added). The trial court analyzed this provision and found an express statement of intention "to bar all lawsuits arising out of the inherent risk of personal injury in using exercise equipment and machines and participating in an exercise program." Trial Court Opinion, 1/7/2014, at 9. I would be inclined to agree with this conclusion had the Appellant injured herself while working out alone, or even in the context of a group fitness program. However, I cannot agree that this waiver language, which we must construe strictly, clearly encompasses personal training services.

To participate in a personal training regimen, Appellant engaged a personal trainer and paid a significant amount of money for her training sessions, over and above what she paid for her membership. In fact, the

personal training engagement required a distinct "Personal Training Agreement" including the following pertinent language:

> I agree to the following terms and conditions of this Personal Training Agreement ("Agreement"): 1. I understand that any/all recommended exercises are voluntary and I can refuse to participate in any/all of the recommended exercises. . . . 5. All standard terms and conditions of my membership agreement are incorporated in and made a part of this Agreement."

Plaintiff's Exhibit 3, Personal Training Agreement dated 7/5/10, at 2. In choosing to work with a personal trainer, a client presumably relies on the health and safety training of the trainer who holds him or herself out as an expert in the field. Indeed, a novice trainee would understandably rely on the expertise of a trainer to avoid the "inherent risk of personal injury in using exercise equipment and machines."

From this perspective, I believe that a broad waiver of liability found on the reverse side of a general membership contract, with no specific reference to personal trainers or personal training, does not clearly encompass personal training services. At best, the exculpatory provision is ambiguous as it pertains to personal training and the provision must be construed against the party seeking immunity from liability. ***Topp Copy***, 626 A.2d at 99.

Finding that the waiver of liability is against public policy and does not clearly encompass claims related to personal training services, I would reverse the grant of summary judgment and remand for further proceedings.

Judge Panella joins this Dissenting Opinion.