Matthew Krushinski CRAIG, Appellant

v.

**AMATEUR SOFTBALL ASSOCIATION OF AMERICA & John Doe, Appellees.**

Superior Court of Pennsylvania.

Argued March 20, 2008.

Filed June 4, 2008.

Edward J. Kress, II, Pittsburgh, for appellant.

Stephen J. Poljak, Pittsburgh, for appellee.

BEFORE: BENDER, BOWES and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Matthew Krushinski Craig appeals the December 28, 2006, Order granting the Amateur Softball Association of America's (ASA) motion for summary judgment and dismissing his complaint with prejudice.

¶ 2 On May 12, 2002, appellant was struck in the head by a softball while playing an Eastern Suburban League slow-pitch softball game organized under ASA rules. Unfortunately, appellant was not wearing a helmet when he was struck. On August 2, 2004, appellant filed a *pro se* complaint alleging he had suffered serious injuries as a result of the accident. The ASA filed preliminary objections in the nature of a motion to strike on August 20, 2004, arguing appellant's *pro se* complaint failed to conform to the rules of court. *See* Pa.R.C.P. 1028(a)(2), **Preliminary Objections.** On November 18, 2004, the trial court issued an Order sustaining the ASA's objections.

¶ 3 Appellant filed an amended complaint with the assistance of counsel on December 28, 2004, alleging in relevant part, the ASA had a duty to recommend and/or mandate appellant wear a helmet; the amended complaint further alleged the ASA insured [1] all East Suburban Softball League members and that it had refused to reimburse appellant for the medical expenses he had incurred as a result of his injuries. The complaint raised both a neg-

---

1. Appellant's use of the term "insured" is somewhat confusing. Apparently, it was appellant's contention before the trial court that ASA was a *de facto* insurer of all games conducted pursuant to ASA rules. Simply because games are conducted pursuant to ASA rules does not mean ASA is an insurer of participants in these games. In *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546 (1978), our Supreme Court stated, "An operator of [a place of amusement] is not an insurer of his patrons." *Id.* at 81, 394 A.2d at 549, *citing Taylor v. Churchill Valley Country Club*, 425 Pa. 266, 269, 228 A.2d 768, 769 (1967) (additional citations omitted), *accord Loughran v. Phillies*, 888 A.2d 872, 875 (Pa.Super.2005), *appeal denied* 588 Pa. 783, 906 A.2d 543 (2006). It stands to reason that if an operator of a facility cannot be considered a *de facto* insurer of its invitees, an entity with no operational responsibility for a facility and who does not owe a general duty of care also cannot be considered as such. Furthermore, appellant has not raised any allegation or produced any evidence which would lead this Court to believe a formal insurance agreement exists.

ligence claim and breach of contract claim against the ASA.

¶4 On September 29, 2006, the ASA filed a motion for summary judgment arguing it owed no duty of care to appellant and further arguing that, even if appellant could prove a duty of care was owed, appellant had assumed the risk of being struck in the head by failing to wear a helmet. Subsequent to entry of the Order granting summary judgment, appellant's motion for reconsideration was denied and a timely notice of appeal followed. On February 5, 2007, the trial court directed appellant to file a statement of matters complained of on appeal. *See generally,* Pa.R.A.P.1925, **Opinion in Support of Order.** Appellant complied with this directive and, on June 27, 2007, the trial court issued an Opinion.

¶5 We begin by outlining the confines of our review:

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that

reasonable minds cannot differ, may a trial court properly enter summary judgment. As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion.

*Roche v. Ugly Duckling Car Sales, Inc.,* 879 A.2d 785, 789 (Pa.Super.2005), appeal denied 587 Pa. 732, 901 A.2d 499 (2006), *quoting Regscan, Inc. v. Con–Way Transp. Servs.,* 875 A.2d 332, 336 (Pa.Super.2005).

¶6 Appellant raises three concisely worded issues for our review:

1. Did the [ASA] have a duty to [appellant]?

2. Did the [ASA] deviate from established custom thereby making this a matter to be decided before a jury?

3. Should [appellant] be allowed to conduct more discovery as there are genuine issues of material fact in regard to a necessary element of a cause of action?

Appellant's brief at 8.

¶7 The trial court granted ASA summary judgment after concluding appellant's claims fell under the "no-duty rule" set forth by our Supreme Court in *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978). Trial Court Opinion, Scanlon, J., 6/27/08, at 3, 5. The rule provides that a defendant owes no duty of care to warn, protect, or insure against risks which are "common, frequent and expected" and "inherent" in an activity. *Jones* at 85, 394 A.2d at 551. If it is determined the no-duty rule is applicable to a negligence claim, a plaintiff will be unable to set forth a *prima facie* case of

liability. *See McCandless v. Edwards,* 908 A.2d 900, 903 (Pa.Super.2006), *appeal denied* 592 Pa. 768, 923 A.2d 1174 (2007) (noting a *prima facie* case of negligence requires a showing of duty, breach, causation, and damages).

¶ 8 In support of its conclusion, the trial court also relied on this Court's decision in *Bowser v. Hershey Baseball Association,* 357 Pa.Super. 435, 516 A.2d 61 (1986). In *Bowser,* this Court affirmed the trial court's grant of compulsory nonsuit after determining the Hershey Association had no duty to warn or protect Bowser from being struck by an errant baseball. *Id.* at 64 ("It is beyond cavil that those who position themselves on or near the field of play while a baseball event is in progress are charged with anticipating, as inherent to the sport of baseball, the risk of being struck by a batted ball.") (citations omitted).

¶ 9 In conjunction with his first issue raised on appeal, appellant offers a number of contentions in an attempt to avoid the no-duty rule. Initially, appellant points to *Crews v. Seven Springs Mountain Resort,* 874 A.2d 100 (Pa.Super.2005), *appeal denied* 586 Pa. 726, 890 A.2d 1059 (2005), for the proposition that an "inherent risk" is one which cannot be removed from the sport in question without altering the fundamental nature of the sport. Appellant's brief at 20. Appellant argues, "the risk of being struck in the head without wearing a helmet by a ball while running the bases, thrown with such force that [one's] skull becomes crushed is not a risk that is 'inherent' to the game of softball." *Id.* at 19.

¶ 10 Appellant's argument confuses the concepts of risk and result. The risk at issue in this matter is being struck by an errant softball; the risk is not the injuries that resulted from being struck. *See generally, Loughran v. Phillies,* 888 A.2d 872,

875 (Pa.Super.2005), *appeal denied* 588 Pa. 783, 906 A.2d 543 (2006) ("The 'no-duty' rule applies to bar a plaintiff's claims for injuries *suffered as a result* of common, frequent and expected risks inherent during the activity in question."), *citing Jones, supra* at 75, 394 A.2d at 546 (emphasis added). Our precedent is clear on this point-the risk of being struck with a softball is inherent to the game. *Loughran, supra* at 876 (concluding that being struck by a baseball thrown into the stands by a ballplayer is an inherent risk of being a spectator at a Major League Baseball game), *accord Bowser, supra* at 64 (finding that being struck by a batted baseball while observing team tryouts from behind the first base line is an inherent risk of being an observer); *see generally, Schentzel v. Philadelphia National League Club,* 173 Pa.Super. 179, 96 A.2d 181, 188 (1953) ("We think the frequency with which foul balls go astray, alight in the grandstand or field, and are sometimes caught and retained by onlookers at baseball games is a matter of such common everyday practical knowledge as to be a subject of judicial notice. It strains our collective imagination to visualize the situation of the wife of a man obviously interested in the game, whose children view the games on the home television set, and who lives in a metropolitan community, so far removed from that knowledge as not to be chargeable with it.").

¶ 11 Appellant next contends *Crews, supra,* stands for the proposition that a risk is not inherent in a sport if it is not "impractical or impossible to eliminate." Appellant's brief at 21. This contention is duplicitous of appellant's initial contention. The *Crews* decision discussed the phrase "impractical or impossible to eliminate" in attempting to refine the definition of "inherent risk." *Id.* at 105. The Court noted the phrase "impractical or impossible to

eliminate" was culled from a New Jersey statute and, in making this notation, stated this language was part of a broader New Jersey test that is "essentially the same" as the fundamental alteration test discussed above. *Id.*, *citing Reisman v. Great Am. Recreation, Inc.*, 266 N.J.Super. 87, 628 A.2d 801, 805 (N.J.Super.Ct.App.Div.1993).

¶ 12 Appellant next contends, "Pennsylvania requires that an organizer of a sporting event or an operator of a place of amusement must 'exercise reasonable care'" and, as such, this duty vitiates the application of the no-duty rule. Appellant's brief at 24, *citing Jones, supra.* While appellant avers in his amended complaint that "East Suburban paid ASA dues to be affiliated with and be part of ASA's organization," there is no evidence in the record suggesting the ASA itself either "organized" or "operated" the May 12, 2002 softball game. Record, No. 10, Plaintiff's Amended Complaint at ¶¶ 7, 45. Appellant's amended complaint suggests it was actually the Eastern Suburban League that had organizational and operational control over the May 12th game. *See* Record, No. 10, Plaintiff's Amended Complaint, at 2, ¶ 6 ("At all times herein referred to, *East Suburban conducted its leagues and games* according to ASA rules.") (emphasis added). Even if we assume for appellant's sake that the ASA both organized and operated the May 12th game, however, the *Jones* Court explicitly stated that while organizers and operators owe a duty of reasonable care to invitees, this duty does not extend to obvious and inherent risks. *Jones, supra* at 85, 394 A.2d at 551 (" '[N]o-duty' rules, apply only to risks which are 'common, frequent, and expected,' . . . and in no way affect the duty of theatres, amusement parks and sports facilities to protect patrons from foreseeably dangerous conditions *not inherent* in the amusement activity.") (emphasis added).

¶ 13 Appellant also maintains his indirect payment of dues to the ASA resulted in the formation of a contract between the parties which gave rise to a duty of care. Appellant's brief at 28–29. This contention is of no moment. Appellant does not point to any provisions or covenants within this alleged contract which would indicate the ASA contracted out of the default rule in this context—the no-duty rule. In forwarding this contention, appellant is, for all intents and purposes, attempting to re-characterize his negligence claim as a contract claim. *See generally, Reardon v. Allegheny College*, 926 A.2d 477, 486–487 (Pa.Super.2007) (applying the gist of the action doctrine). Appellant's attempt at re-characterization does not, in of itself, create a genuine issue of material fact appropriate for a jury's consideration.

¶ 14 Appellant next asserts the ASA owed him a duty of care because it was foreseeable he could be struck with a softball during play. Appellant's brief at 31. While there is no question foreseeability is a relevant consideration in determining whether a duty of care is owed as a general matter, appellant's contention is premised on flawed logic. All inherent risks which fall within the parameters of the no-duty rule are, by definition, foreseeable. Once a risk is deemed inherent, it no longer matters whether the risk is also foreseeable. The inherency determination mandates application of the no-duty rule *ab initio.* In other words, the issue of foreseeability is ancillary to the inherency determination.

¶ 15 Appellant also contends, "A duty exists between the parties based upon public policy alone." Appellant's brief at 33. The public policy at issue, according to appellant, is "a strong public interest in

ensuring the safety of athletes, and . . . prevent[ing] horrific head injuries from occurring during participation in . . . softball game[s]." *Id.* Appellant's contention does not warrant relief.

■ ¶ 16 In determining whether a judicial decision should be premised on public policy alone, we apply the following standard:

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.

*See e.g., Weaver v. Harpster & Shipman Fin. Servs.,* 885 A.2d 1073, 1076 (Pa.Super.2005), *limited appeal granted to other issues* 592 Pa. 13, 922 A.2d 876 (2007), *quoting Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407, 409 (1941).

¶ 17 Appellant fails to point us to a case wherein the application of the no-duty rule, which itself is based on the sound policy judgment that it is undesirable to hold individuals liable for failing to warn against or protect others from obvious risks, was superseded by resort to nebulous notions of public policy. *Jones* sets forth a single exception to the no-duty rule—"Only when the plaintiff introduces adequate evidence that the amusement facility in which he was injured deviated in some relevant respect from established custom will it be proper for an 'inherent-risk' case to go to the jury." *Jones, supra* at 84, 394 A.2d at 550. Appellant's contention does not implicate this exception and the trial court did not abuse its discretion

or commit an error of law in concluding as much.

¶ 18 With respect to his first issue, appellant's final contention is that he did not "knowingly consent to being struck in the head with a ball which could crush his skull" and, consequently, did not assume such a risk. Appellant's brief at 22. Even if we accept *arguendo* the risk of being struck by a softball must be explicitly assumed, *see contra Schentzel, supra* at 186, we need not determine whether appellant assumed the risk of being struck as he was not owed a duty of care.

■ ¶ 19 Turning to the second issue raised on appeal, appellant contends the ASA "deviated from the established custom of requiring or at least recommending the wearing of batting helmets during softball games." Appellant's brief at 36. Appellant further contends that *Jones, supra,* forwards the proposition that once a plaintiff introduces evidence that a defendant deviated from established custom, the case must go to the jury. *Id.* at 37.

¶ 20 In *Jones,* our Supreme Court did state, as set forth above, that an inherent-risk case is appropriate for jury consideration when a plaintiff introduces adequate evidence that the owner or operator of an amusement facility deviated from established custom. *Jones* at 83–84, 394 A.2d at 550. Assuming for the moment that the spirit of this exception can be applied to situations where the defendant owes no general duty of care as a landowner or possessor of land, appellant has failed to produce any evidence of the custom he alleges is established. While appellant points to portions of rule manuals from other softball rules organizations to substantiate his allegations, he failed to include these manuals in the record and does not point to a public source where this Court could obtain these manuals. Additionally, appellant does not indicate what

percentage of softball players use the rule manuals upon which he relies; he does not state how many softball rule making bodies exist; and he makes no mention of what percentage of players organize games under the rules promulgated by these various bodies. In short, neither our standard of review nor the custom exception to the no-duty rule as it is set forth in *Jones* permits us to reverse the trial court simply because appellant baldly avers the ASA has violated established custom. *Roche, supra* at 789; *Jones, supra* at 83–84, 394 A.2d at 550.

¶ 21 Finally, appellant contends the trial court erred in refusing to allow him to conduct further discovery into the operations of the ASA Insurance and Risk Management Committee. Appellant contends that such discovery would help disclose whether the ASA felt it was foreseeable that players not wearing helmets during softball games could be injured. Appellant further contends "the measurement of foreseeability" is important in determining whether a duty of care was owed. Appellant's brief at 40.

¶ 22 Again, this argument suffers from defective logic. All inherent risks which fall within the auspices of the no-duty rule are by definition foreseeable. Once a risk is deemed inherent, it no longer matters whether the risk is foreseeable, as the inherency determination mandates application of the no-duty rule *ab initio*. Hence, the further discovery appellant requests would only result in the ascertainment of irrelevant evidence and is therefore unwarranted.

¶ 23 In conclusion, appellant has failed to establish the trial court committed an error of law or abused its discretion. There is no question the injuries appellant suffered were catastrophic and resulted from an unfortunate accident; nonetheless, the mere fact that an accident occurred does not mean the accident is compensable. Compensability requires fault and fault derives from defined standards of negligence. In this instance, appellant is unable to produce evidence tending to show a genuine issue of material fact exists as to whether the ASA owed him a duty of care. The Order must be affirmed.

¶ 24 Order affirmed.

¶ 25 BOWES, J., concurs in the result.