**M. Paul VINIKOOR, Appellant**

v.

**PEDAL PENNSYLVANIA, INC. and Department of Transportation.**

Commonwealth Court of Pennsylvania.

Argued May 5, 2009.

Decided June 4, 2009.

Reargument Denied July 27, 2009.

David M. Axinn, Hollidaysburg, for appellant.

Lauren R. Ames, Pittsburgh, for appellee, Pedal Pennsylvania, Inc.

BEFORE: LEAVITT, Judge, BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Paul M. Vinikoor (Vinikoor) appeals from an order of the Court of Common Pleas of Blair County (trial court) which denied the motion for summary judgment filed by the Department of Transportation (Department) but granted the motion for summary judgment filed by Pedal Pennsylvania, Inc. (Pedal).[1] We affirm.

Vinikoor commenced this action by filing a writ of summons on July 17, 2006. In

---

1. In an order dated February 18, 2009, this court granted Vinikoor's petition for permission to appeal from the trial court's interlocutory order.

the negligence action, Vinikoor sought to recover damages resulting from a bicycle accident which occurred while he was participating in a tour organized by Pedal. Vinikoor alleged in his complaint that his bike's right front tire became locked in a groove on a public roadway. As a result, Vinikoor's bicycle was trapped and Vinikoor was unable to steer, causing him to fall from his bicycle. Vinikoor suffered injuries including a central dislocation of his right pelvis and a loss of cartilage in that joint.

Vinikoor asserts that Pedal was negligent, in that Pedal represented to Vinikoor that the route was safe when in fact there was a hidden danger, consisting of a curved groove on the roadway. Additionally, Vinikoor alleged that Pedal failed to make an inspection of the route, or alternatively, failed to notice the defect in the road during its inspection, and thus failed to provide a safe route. Vinikoor alleged that Pedal assured Vinikoor that it had inspected the route and that it was safe. Additionally, Vinikoor was provided a cue sheet and route description, which noted cautions at certain locations where there were dangers. A caution was not noted at the intersection where the incident occurred. Vinikoor also alleged that Department was negligent with respect to construction of the road in the area where the fall occurred.[2]

Pedal filed an answer and new matter. In the new matter, Pedal asserted that Vinikoor's claims were released and discharged based upon a release signed by Vinikoor prior to the tour. Additionally, Pedal claimed that it had no duty to Vinikoor and that Vinikoor had voluntarily assumed the risk. Department also filed an answer and new matter. Vinikoor replied to all new matters.

Thereafter, both Pedal and Department filed motions for summary judgment. Pedal maintained that it was entitled to summary judgment because Vinikoor signed an exculpatory clause barring all claims against Pedal. Additionally, Pedal claimed that Vinikoor voluntarily assumed the risk and that it had no duty. Department filed a similar motion.

The trial court set the matter down for a hearing. According to Vinikoor's deposition, he was an experienced bicyclist who had been on numerous bicycle tours. The tour at issue, organized by Pedal, was a week long bike tour covering over four hundred miles. Vinikoor had previously been on a tour organized by Pedal. In his complaint and in his deposition testimony, Vinikoor claimed that he was assured by Pedal that the route had been inspected and was safe. Further, Pedal provided Vinikoor with a cue sheet and route description, which included detailed directions and noted cautions at various locations where there were dangers. No caution was noted at the intersection where the accident occurred.

---

**2.** In his complaint, Vinikoor specifically pled the following:

> 13. The Plaintiff, prior to joining the tour, was assured by the Defendant, Pedal Pennsylvania, Inc. that it had inspected the route, and that it was safe. He was provided a Cue Sheet and route description, which included detailed directions, and noted cautions at certain locations where there were dangers. No caution was noted at the intersection which is the subject of this Complaint.

> 14. The Defendant was negligent, in that it:
> A. Represented to the Plaintiff that the route was safe, when in fact there was a hidden danger on the route, consisting of a deep, curved groove/joint in the roadway;
> B. Failed to make an inspection of the route, or in the alternative, failed to notice the defect in the road surface when it made its inspection;
> C. Failed to provide the Plaintiff with a safe route.
> (R.R. at 3.)

Prior to participating in the tour, Vinikoor voluntarily signed a waiver form drafted by Pedal. In his deposition, Vinikoor testified that he was of sound mind when he signed the release and understood what he was signing. The release provides, in pertinent part, as follows:

**Waiver Form**

**Waiver, Release and Consent**

Please read, sign and return
with your entry.

You cannot ride without a signed waiver.

I hereby waive and discharge Pedal Pennsylvania, Inc. and any organizations associated with this event (including but not limited to municipalities, colleges and universities, high schools, sponsors, and any employees or associates thereof), from all liability as a result of my participation in Pedal Pennsylvania, whether caused by negligence or otherwise.

I understand that accidents, with fatalities, serious bodily injury and/or property damage can occur during bicycle touring, as a result of negligence or otherwise. Knowing the risks involved I nevertheless agree to assume those risks and to release all of the persons or entities mentioned above for any injury, death, illness or property damages occurred [sic] on this tour or in the travel to and from this tour. I also release Pedal Pennsylvania from all damage or injuries as a result of weather conditions during the tour.

I understand that if I leave before the posted daily starting time or bicycle a course different from than mapped or marked, that, I will not receive the services as published or advertised, and that I will be riding at my own risk and release the aforementioned entities from liability for any injury, death, or damages which may occur to me or anyone else.

. . .

It is finally agreed that this complete waiver is binding on my heirs and assigns.

I have read, understood and certify my compliance by my signature.

(R.R. at 11.)

■ The trial court determined, contrary to Vinikoor's contention, that the exculpatory language in the waiver was not ambiguous, and that such demonstrated a clear intention to waive and discharge Pedal from all liability as a result of Vinikoor's participation in the tour, whether caused by negligence or otherwise. Although Vinikoor argued that Pedal informed him that it would inspect the route, the trial court observed that such was not part of the written agreement between the parties. An ambiguity exists if the contract was "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Nissley v. Candytown Motorcycle Club, Inc.,* 913 A.2d 887, 889–890 (Pa.Super.2006) (Citation omitted.). Here, the trial court reasoned that the waiver clearly intended to release Pedal from all liability.

The trial court further determined that the waiver did not contravene public policy. Vinikoor testified that he participated in numerous tours and understood the risk of injury associated with bike riding.

The trial court granted the motion for summary judgment filed by Pedal, but denied the motion for summary judgment filed by Department. Thereafter, Vinikoor filed a petition for permission to appeal from the trial court's interlocutory order, which this court granted.[3]

___

**3.** Where summary judgment has been granted, our review is limited to determining

In summary judgment cases, review of the record must be conducted in the light most favorable to the non-moving party, and all doubts regarding the existence of a genuine issue of material fact must be resolved against the non-moving party. *Ertel v. Patriot–News Company*, 544 Pa. 93, 674 A.2d 1038 (1996).

■ Initially, Vinikoor, the non-moving party here, claims that summary judgment was not proper because the exculpatory release is internally inconsistent. An exculpatory clause is valid if three conditions are met: (1) the clause must not contravene public policy, (2) the contract must be between persons relating entirely to their own private affairs and (3) each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. *Topp Copy Products, Inc. v. Singletary*, 533 Pa. 468, 471, 626 A.2d 98, 99 (1993). Even if an exculpatory clause is determined to be valid, however, it will still be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. The standard for evaluating an exculpatory release is as follows:

> In interpreting such clauses we listed as guiding standards that: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in case of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the

immunity is upon the party invoking protection under the clause.

*Id.* 533 Pa. at 471, 626 A.2d at 99.

■ Moreover, a contract is to be construed against its drafter. *Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Board*, 559 Pa. 56, 739 A.2d 133 (1999). Additionally, when ambiguity exists in a contract, parole evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. *The Insurance Adjustment Bureau, Inc. v. Allstate Insurance Company*, 588 Pa. 470, 905 A.2d 462 (2006).

Here, Vinikoor argues that the waiver contains conflicting language. The first two paragraphs of the release purport to release Pedal from all liability, whether caused by Pedal's negligence or otherwise. However, according to Vinikoor, the third paragraph grants a release only in limited circumstances. The third paragraph provides in pertinent part that "if I leave before the posted daily starting time or bicycle a course different than mapped or marked, that, I will not receive the services as published or advertised, and that I will be riding at my own risk and release the aforementioned entities from liability...." (R.R. at 11.)

According to Vinikoor, the reference to "the services as published or advertised," makes a clear distinction between the general risks inherent in any bicycle ride and the specific risk which Pedal undertook to minimize. Here, Vinikoor's claim against Pedal is not simply that he fell and got hurt, but that Pedal made a specific promise to him that it would inspect the route

whether the trial court committed an error of law or abuse of discretion. *Sims v. Silver Springs–Martin Luther School*, 155 Pa.

Cmwlth. 619, 625 A.2d 1297, 1299, n. 3 (1993).

and warn him of any dangers. In his deposition, Vinikoor testified that individuals employed by Pedal would, before each day's ride, go over the route and describe to participants any problems which were anticipated. Vinikoor, having toured with Pedal previously, reasonably expected that Pedal would continue to inspect the route and warn of anticipated dangers.

We agree with Pedal and the trial court, however, that the waiver is unambiguous and clearly reflects the intention of the parties to release Pedal from liability. In *Nissley,* the plaintiff brought a personal injury negligence action against the motorcycle club. Plaintiff, a member of the club since 1998, signed a release and indemnity agreement. In 2003, plaintiff went to the club's track to ride his motorcycle. While there, two individuals were maintaining the track with a tractor and backhoe and plaintiff passed by them ten to twenty times. For part of the day, a flag man directed riders around the equipment. Subsequently, the plaintiff then rode off a jump and collided with the tractor. No flag man was being utilized at the time and the tractor was hidden behind the jump and could not be seen until the plaintiff was airborne. The trial court granted the club's motion for summary judgment on the basis that the negligence claim was barred by the exculpatory clause signed by the plaintiff.

On appeal, the Superior Court affirmed. The court held that the language of the release was not ambiguous and demonstrated the clear intention to release all claims for injuries sustained while participating in the relevant activity.[4] There was no ambiguity in the statement "I hereby give up all my rights to sue or make claim." The exculpatory clause explicitly stated that the signer was giving up all rights to sue, and a reasonable person would have understood he was waiving all rights to bring a claim.

Here, the release signed by Vinikoor explicitly states that Pedal is released from all liability, injuries or damages. Also, Vinikoor agreed that the signed document was a "complete waiver" and acknowledged that he read and understood the agreement. In his deposition testimony, Vinikoor stated that he read, understood and agreed with the provisions in the form and thereafter signed it.

Further, we do not agree with Vinikoor that there is a conflict between the first two paragraphs of the release and the third. Specifically, the first two paragraphs address individuals who participate in the tour and release Pedal from all liability. Paragraph three addresses those individuals who cease to participate in the tour by leaving before the scheduled start time or choose to bicycle a course different from that which is mapped. Such nonparticipant, via paragraph three, acknowledges that he or she will be riding at his or her own risk and similarly release Pedal and the aforementioned entities from lia-

---

4. The agreement provided:
   THIS IS A RELEASE AND INDEMNITY AGREEMENT
   READ IT BEFORE SIGNING
   I hereby make application for membership in the CANDYTOWN MOTORCYCLE CLUB. If accepted, I agree to fulfill the obligations of membership and to follow the Club Constitution and Bylaws. I hereby give up all my rights to sue or make claim against CANDYTOWN MOTORCYCLE CLUB, INC .... and all other persons or organizations connected with the club for any injury to property or person I may suffer ... whether such injury arises while I am upon the premises. I know the risks of danger to myself and my property while upon the club property and, relying upon my own judgment and ability, assume all such risks of loss and hereby agree to reimburse all costs to those persons or organizations connected with this club for damages incurred as a result of any injury that I cause or receive.

bility for any injury, death, or damages which may occur. All three paragraphs clearly release Pedal from all liability and as such, there is no conflict or ambiguity.[5]

We also conclude that the exculpatory release is not contrary to public policy. Here, Vinikoor testified that he was aware of the risks associated with bicycle riding and had, in fact, been injured when he fell off his bike during a previous bike tour. There is a valid public policy to preclude recovery against self-inflicted injuries through known risks. *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993).

Thus, even if Pedal was negligent in any of the particulars alleged, Vinikoor waived and discharged Pedal from all such liability.

Although the trial court did not address the issue of whether Vinikoor's claim was barred under the voluntary assumption of the risk/no duty rule, which was raised in Pedal's motion for summary judgment, Pedal states that this court may, however, affirm on that basis. *Pennsylvania Department of Banking v. NCAS of Delaware, LLC*, 596 Pa. 638, 948 A.2d 752 (2008).

In *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993), the defendant's grandfather had made a fireworks cannon. The plaintiff expressed an interest in firing the cannon and went to his house next door to retrieve black powder. The plaintiff held a flashlight while the defendant filled the cannon with powder. The plaintiff stood back while defendant ignited the cannon, which then exploded and injured both of them.

The court held that a non-suit in favor of defendant was proper because, as a matter of law, the plaintiff had assumed the risk of injury by voluntarily participating in a dangerous activity, as the ignition of gunpowder is inherently dangerous and might cause injury to oneself or others. A court may determine, as a matter of law, that a defendant owed plaintiff no duty of care where "reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Id.* at 162–163, 620 A.2d at 1113.

Similarly, in *Zachardy v. Geneva College*, 733 A.2d 648 (Pa.Super.1999), *appeal denied*, 561 Pa. 700, 751 A.2d 193 (2000), the court affirmed the granting of defendant's motion for summary judgment under the assumption of the risk analysis. Therein a baseball player voluntarily and knowingly proceeded to play on a baseball field which had depressions/unevenness and injured himself while stepping into a hole.

Here, Vinikoor knew that falling and encountering irregular road conditions were risks of bicycling. In fact, Vinikoor was involved in a bicycle accident in 1993, during which he injured his leg. Vinikoor nonetheless assumed the risks involved in bicycling.

The no-duty rule provides that a defendant owes no duty of care to warn, protect or insure against risks which are common, frequent, expected and inherent in an activity. *Craig v. Amateur Softball Association of America*, 951 A.2d 372 (Pa.Super.2008). In *Pakett v. The Phillies L.P.*, 871 A.2d 304 (Pa.Cmwlth.2005), the plaintiff attended a major league baseball game and was struck by a foul ball while sitting in the stands. The plaintiff had sat in the seat before and knew that foul balls

5. We also note that Vinikoor points to language in paragraph three referencing "services published or advertised." There are, however, no advertisements or publications in the record, nor did Vinikoor in his deposition discuss any specific advertisements or publications.

reached that area. This court affirmed the grant of summary judgment determining that the risk of being hit by a foul ball during a baseball game was an inherent risk of attending a game. Additionally, the team did not assume additional duties by placing a protective screen behind home plate.

Likewise, in this case, even if Pedal engaged in actions such as planning the route, painting arrows on the road and warning of "rumble strips", these activities do not preclude application of the voluntary assumption of the risk/no duty rule with respect to the risk of falling from a bicycle or encountering an irregular surface.

■ In his reply brief, Vinikoor states that the doctrine of the assumption of the risk has been supplanted by the Pennsylvania General Assembly's adoption of a system of recovery based on comparative fault in the Comparative Negligence Act, 42 Pa.C.S. § 7102(a)-(b); *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 762 A.2d 339 (2000). The doctrine of assumption of the risk is preserved only "in cases involving express assumption of risk, or cases brought pursuant to 402A (strict liability theory), or cases in which assumption of risk is specifically preserved by statute." *Duquesne Light Company v. Woodland Hills School District*, 700 A.2d 1038, 1054 (Pa.Cmwlth.1997), *appeal denied*, 555 Pa. 722, 724 A.2d 936 (1998) (citation omitted).

The issue of whether Vinikoor contractually waived his right to recover has been argued by the parties in terms of the exculpatory release at issue herein. Because this is not a strict liability case, nor has it been argued that any statutory exception applies, the only remaining question is whether Pedal owed a duty to Vinikoor. Here, the assertion by Pedal that it had no duty to Vinikoor is based solely on the claim that bicycling has inherent dangers. Vinikoor maintains that his acknowledgement that he was aware of the general risks of injury is not sufficient to grant summary judgment, unless it also appears that he consciously appreciated the specific risk that attended a certain endeavor, assumed the risk of injury by engaging in the endeavor despite the appreciation of the risk and that the injury sustained was the same risk of injury that was appreciated and assumed. *Hadar v. AVCO Corporation*, 886 A.2d 225, 229 (2005), *appeal denied*, 586 Pa. 758, 895 A.2d 550 (2006).

Here, we conclude that as acknowledged by Vinikoor, he was aware of the general risks of riding a bicycle, including uneven surfaces, voluntarily chose to participate, voluntarily signed a waiver releasing Pedal from all liability, and acknowledged by voluntarily signing the waiver that he was aware that riding a bicycle could result in serious bodily injury. Vinikoor deliberately engaged in the bicycle tour with knowledge and awareness of the specific risks inherent in riding a bicycle, including bodily injury.

In accordance with the above, the decision of the trial court is, therefore, affirmed.

## *ORDER*

Now, June 4, 2009, the order of the Court of Common Pleas of Blair County, in the above-captioned matter, is affirmed.