Anthony Degliomini and : 
Karen Degliomini : 
  : 
  : 
v. : 
  : 
ESM Productions, Inc. and : 
City of Philadelphia : 
  : No. 1573 C.D. 2018
Appeal of: City of Philadelphia : Argued: June 3, 2019

BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: June 25, 2019

       The City of Philadelphia (City) appeals from the October 24, 2018 order of the Court of Common Pleas of Philadelphia County (trial court) which denied City's Motion for Post-Trial Relief and determined that an exculpatory release signed by a participant of a charity bicycle ride was invalid as violative of public policy. Upon review, we reverse.

       On May 17, 2015, Anthony Degliomini (Degliomini or Appellee) suffered extensive physical injuries as a result of a fall from his bicycle while participating in a charity bicycle ride through the streets of Philadelphia (the Ride) sponsored by the Philadelphia Phillies (Phillies) and ESM Productions, Inc. (ESM). Before commencing the Ride, Appellee executed via e-signature an exculpatory

release of liability[1] entitled "2015 Phillies Charities Bike Ride Release" against, *inter alia*, the Phillies, ESM, and the City (the Release).

Degliomini and his wife, Karen Degliomini (collectively the Degliominis or Appellees), initiated the instant lawsuit in April 2016 against City and multiple other defendants seeking damages for the injuries Degliomini sustained during the Ride and for Mrs. Degliomini's loss of consortium. City asserted that the Release absolved it of liability and proceeded to trial. After a five-day trial during which the trial court refused to allow the admission of evidence regarding the Release, a jury returned a verdict in favor of Appellees.[2] City filed a Motion for Post-Trial Relief seeking judgment notwithstanding the verdict (JNOV) based on the Release, Degliomini's assumption of the risk, and a failure of Appellees' causation evidence. Appellees filed a Motion for Delay Damages. Following oral argument, on October 24, 2018, the trial court denied City's post-trial motion and granted Appellees' delay damages motion. This timely appeal followed.

In this Court,[3] City again asserts the three alternative claims from its post-trial motion: (1) that the Release precludes the Degliominis from recovering damages against City for injuries suffered during the Ride; (2) that City owed Degliomini no duty of care because Degliomini assumed the risks of participating in

---

[1] An exculpatory clause "reliev[es] a party from liability resulting from a negligent or wrongful act." Black's Law Dictionary 648 (9th ed. 2009).

[2] The jury awarded Degliomini $3,086,833.19 in damages and a further $100,000.00 to Mrs. Degliomini for loss of consortium. The trial court later reduced the verdict amount to conform to the $500,000.00 statutory damages cap. *See* 42 Pa.C.S. § 8553(b).

[3] "This Court's review of the denial of a motion for JNOV is limited to determining whether the trial court abused its discretion or committed an error of law." *Joers v. City of Philadelphia*, 190 A.3d 797, 803 (Pa. Cmwlth. 2018), *reargument denied* (Sept. 4, 2018) (citing *Dooner v. DiDonato*, 971 A.2d 1187, 1193 (Pa. 2009)).

2

the Ride, participated in the Ride knowing the risks inherent in bicycle races, and voluntarily chose to continue in the Ride despite his knowledge of dangerous course conditions; and (3) that the Degliominis failed to meet their burden of proving causation at trial. *See* City's Brief at 2-3.

We first discuss City's Release argument, as it is dispositive. City contends that the Release is a valid and enforceable exculpatory release of the kind regularly enforced by Pennsylvania courts and to which no public policy exception applies, and that the trial court erred when it held the Release invalid as violative of public policy. *See* City's Brief at 13-25. We agree.

Initially, it is undisputed that, prior to participating in the Ride, Degliomini e-signed the Release, which provided, in pertinent part, as follows:

### 2015 Phillies Charities Bike Ride Release

I know that participating in an organized bike ride such as the 2015 Phillies Charities Bike Ride is a potentially hazardous activity. I should not enter and bike unless I am medically able and properly trained. I understand that bicycle helmets must be worn at all times while participating in the event and I agree to comply with this rule. I further understand and agree that consumption of alcoholic beverages while operating a bicycle is a violation of the law and strictly prohibited. I know that there will be traffic on the course route and I assume the risk of biking in traffic. I also assume any and all other risks associated with participating in the event, including but not limited to falls; contact with other participants; the effects of the weather; the condition of the roads; and unsafe actions by other riders, drivers, or non-participants. I consent to emergency medical care and transportation in the event of an injury, as medical professionals deem appropriate.

3

All such risks being known and appreciated by me, and in consideration of the acceptance of my entry fee, I hereby, for myself, my heirs, executors, administrators and anyone else who might claim on my behalf, promise not to sue and I release and discharge The Phillies, Phillies Charities, Inc., and any and all sponsors of the event, the City of Philadelphia, Philadelphia Authority for Industrial Development, Philadelphia Industrial Development Corporation, ESM Productions, and each of their respective officers, employees, agents, owners, partners, successors and assigns and all volunteers (collectively, the "Releasees"), from any and all claims of liability for death, personal injury, other adverse health consequence, theft or loss of property or property damage of any kind or nature whatsoever arising out of, or in the course of, my participation in the event even if caused by the negligence of any of the Releasees. This Release extends to all claims of every kind or nature whatsoever.

. . .

I, intending to be legally bound, represent that I am at least eighteen years old; either I am registering to enter this event for myself or as a parent or guardian of a minor who is at least thirteen years old; I have carefully read and voluntarily agree to this Release on behalf of myself and, if applicable, the minor who is being registered to participate, and I understand its full legal effect.

Release, Reproduced Record (R.R.) 287-88. Clearly, the text of the Release intended to create a contract that would insulate, among others, City from liability for any and all accidents, injuries, or misfortunes that may befall participants during the course of the Ride. No question exists about the facial validity of the Release.

Turning to the enforceability of the Release, our Supreme Court has explained that such exculpatory releases are generally valid and enforceable where three conditions are met:

4

> First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion.

*Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1189 (Pa. 2010). Neither party alleges, and the trial court did not determine, that the Release is not a contract between parties relating to private affairs or that the contract was one of adhesion. Indeed, all agree that the Release pertains to the use of the City's streets during a private event – the Ride – in which Degliomini was under no obligation to participate. Therefore, we need only examine whether the Release contravenes public policy.

The Superior Court of Pennsylvania has explained,

> [c]ontracts against liability, although not favored by courts, violate public policy only when they involve a matter of interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals.

*Seaton v. E. Windsor Speedway, Inc.*, 582 A.2d 1380, 1382 (Pa. Super. 1990). Further, Pennsylvania courts have noted multiple times that

> [a]n agreement exculpating the sponsor of the race and the owner of the track does not contravene public policy. It is a contract between individuals pertaining to their private affairs and does not impair generally the rights of members of the public.

5

*Id.* at 1383 (quoting *Valeo v. Pocono Int'l Raceway, Inc.*, 500 A.2d 492 (Pa. Super. 1985)). Further, a release that does not relate to an essential service, but merely governs a voluntary recreational activity, does not implicate a public interest. *See Chepkevich*, 2 A.3d at 1190-91.

Generally, the Commonwealth's courts have consistently upheld the validity of exculpatory releases with regard to various sporting and recreational events as non-violative of public policy. *See, e.g.*, *Chepkevich*, 2 A.3d 1174 (downhill skiing); *McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99 (Pa. Super. 2015) (whitewater rafting); *Wang v. Whitetail Mountain Resort*, 933 A.2d 110 (Pa. Super. 2007) (snow tubing); *Nissley v. Candytown Motorcycle Club, Inc.*, 913 A.2d 887 (Pa. Super. 2006) (use of motorcycle club's track); *Seaton*, 582 A.2d 1380 (automobile race pit crew hobbyist); *Valeo*, 500 A.2d 492 (automobile racing). Specifically, this Court has determined that exculpatory releases used in bike tour-type events are not contrary to public policy. *See Vinikoor v. Pedal Pa., Inc.*, 974 A.2d 1233, 1240 (Pa. Cmwlth. 2009); *see also Scott v. Altoona Bicycle Club* (Pa. Cmwlth., No. 1426 C.D. 2009, filed July 16, 2010),[4] slip op. at 8. In *Vinikoor*, this Court refused to invalidate an exculpatory release used in a bike tour event based on public policy grounds, stating instead that "[t]here is a valid public policy to preclude recovery against self-inflicted injuries through known risks." *Vinikoor*, 974 A.2d at 1240 (discussing injuries suffered as a result of encountering the known and voluntary risk of adverse road conditions during bike tour). In *Scott*, which involved injuries suffered as the result of a fall during a seven-day bike race, this Court determined that where an exculpatory release represented a private agreement between an individual and various entities – including a municipal entity – that did

---

[4] This Court's unreported memorandum opinions may be cited for persuasive value. 210 Pa. Code § 69.414.

not involve a mandatory agreement between an individual and an employer, or a public service, a public utility, a common carrier or a hospital or healthcare provider, and where the individual was under no obligation to either sign the release or participate in the biking event, the exculpatory release was valid and did not contravene public policy, despite the event occurring on public streets. *See Scott*, slip op. at 8-9.

Here, as in *Scott*, the Release was a private agreement between Degliomini and various entities involved with the Ride. Degliomini was under no obligation to agree to the Release or participate in the Ride. The Release did not concern an essential service but instead merely governed a voluntary recreational activity. Additionally, because the Ride was a private event that was to occur on public roads, City's involvement with the Ride was akin to that of a private race track owner hosting a race. Therefore, no contravention of public policy occurred when Degliomini voluntarily agreed to absolve City of liability for the use of its roads for this specific recreational activity. *See Scott*; *Vinikoor*; *Seaton*.

The trial court's reliance on Section 5-500 of the Philadelphia Home Rule Charter[5] (Home Rule Charter) to justify invalidating the Release is misplaced. *See* Trial Court Memorandum In Support of Order Denying the Motion for Post-Trial Relief Filed By the City of Philadelphia (Trial Court Memorandum) at 14-17. Contrary to the trial court's position, Section 5-500 is not a regulation that establishes a non-waivable standard of care as would a health or safety regulation. Home Rule Charter Section 5-500 is instead an organizational section that mandates the creation of the Department of Streets and delineates the functions of the Department upon its creation, which are to include the design, construction, repair

---

[5] Phila., Pa., Philadelphia Home Rule Charter (2019).

7

and maintenance of City's streets. *See* Home Rule Charter § 5-500.[6] In establishing the Department of Streets, Section 5-500 provides no standard of care or guidelines for how the Department must accomplish its road repair duties. *Id.* Certainly, the Home Rule Charter established an obligation to maintain City's streets that would be carried out by the Department of Streets. However, the Department's and, therefore, City's, duty of care to repair streets arising under Section 5-500 was no different than any common law duty of reasonable care, which may be waived. *See Chepkevich*, 2 A.3d at 1194-95 (exculpatory release waiving negligence claims for hazardous, voluntary activity valid and enforceable).

As this Court has previously made clear, in regard to private, voluntary events like charity bike rides, exculpatory releases are private agreements into which individual participants are under no obligation to enter. *See Scott*, slip op. at 9. Based on the above, the trial court committed an error of law by denying City's

---

[6] Home Rule Charter Section 5-500 establishes City's Department of Streets and provides, in pertinent part:

> The Department of Streets shall have the power and its duty shall be to perform the following functions:
>
> (a) City Streets. It shall itself, or by contract, design construct, repair and maintain:
>
>     (1) City streets, which shall include highways, roads, streets, alleys, footways, bridges, tunnels, overpasses and underpasses, including approaches and viaducts, owned, controlled or operated by the City or designated in accordance with law as streets of the City;
>
>     (2) The roads and drives in Fairmount Park.

Home Rule Charter § 5-500(a).

Motion for Post-Trial Relief and finding the Release was invalid as violative of public policy. *See Chepkevich*; *Scott*; *Vinikoor*. Accordingly, we reverse.[7]


_____
CHRISTINE FIZZANO CANNON, Judge

---

[7] Our disposition on the exculpatory release issue makes unnecessary any discussion of City's remaining arguments that Degliomini assumed the risk of a road condition-related accident by participating in the Ride or that the Degliominis failed to carry their burden of proof regarding causation.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Degliomini and :
Karen Degliomini :
 :
 :
v. :
 :
ESM Productions, Inc. and :
City of Philadelphia :
 : No. 1573 C.D. 2018
Appeal of: City of Philadelphia :

O R D E R

AND NOW, this 25th day of June, 2019, the October 24, 2018 order of the Court of Common Pleas of Philadelphia County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge